**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

ENGELBERTO SANTANA,
          *Defendant-Appellant.*

No. 07-50190

D.C. No.
CR-03-01017-NAJ-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Napoleon A. Jones, District Judge, Presiding

Argued and Submitted
March 4, 2008—Pasadena, California

Filed May 27, 2008

Before: John R. Gibson,* Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Gibson

---

*The Honorable John R. Gibson, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

## COUNSEL

Zandra L. Lopez, Federal Defenders of San Diego, California, for the defendant-appellant.

Randy K. Jones and David P. Curnow, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.

## OPINION

GIBSON, Senior Circuit Judge:

Engelberto Santana appeals from the district court's decision to revoke his supervised release and impose a new term of eight months' imprisonment and twenty-five months of supervised release. He argues that his right to prompt disposition of the government's petition to revoke his supervised release was violated by the government's unjustified delays in executing the warrant for his arrest and in bringing him before a judge for his initial appearance. He also contends that the procedure for revocation of supervised release is unconstitutional in light of the Supreme Court's decision in *Cunningham v. California*, 127 S. Ct. 856 (2007). We affirm.

Santana was serving a three-year term of supervised release when he was arrested on May 10, 2006, on charges of willful cruelty to a child and obstruction of law enforcement. He was taken into custody by the State of California on those charges and eventually was convicted and sentenced to three days' jail time and four years of probation. While he was in state custody, a federal petition for revocation of supervised release was filed, based on the state conviction and other alleged violations of the terms of his release. On August 10, 2006, the United States District Court for the Southern District of California issued a warrant against Santana. On September 25, 2006, Santana was due to be released from state custody, but he was detained by the State because of the pending federal warrant. The federal authorities did not execute that warrant and bring Santana into federal custody until October 20, 2006, and even then he apparently was kept in the Central District of California until January 23, 2007, when he was brought to the Southern District of California for his initial appearance. After that, his proceedings progressed normally, with his preliminary hearing being held on February 20, 2007. He moved to dismiss for unreasonable delay in executing the warrant and unreasonable delay between the issuance of the warrant

and the initial appearance. He also contended that supervised release revocation proceedings generally are unconstitutional.

On the claim for failure to provide a prompt hearing, the district court considered the relevant time of delay to be 121 days, counting from September 25, 2006, when Santana would have been released from state custody if not for the pending federal warrant, to January 23, 2007, when Santana had his initial appearance. Even though the Speedy Trial Clause[1] does not apply to revocation cases, the district court analogized to the timeliness analysis used in Speedy Trial Clause cases, which balance the length of delay, the reason for the delay, the promptness of the defendant's assertion of his right to a timely hearing, and the prejudice to the defendant. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). The district court concluded that the delay of approximately four months before the initial hearing was cause for concern and that the government offered no legitimate reason for the delay. On the other hand, Santana did not assert his right until after the initial appearance had taken place, and Santana was not able to point to any concrete prejudice he had suffered as a result of the delay. Accordingly, the district court concluded that the delay in obtaining a hearing did not compel dismissal.

The district court also concluded that the twenty-five day delay in executing the warrant and bringing Santana into federal custody did not require dismissal and that the procedure for revocation of supervised release was not unconstitutional. The court therefore denied Santana's motion to dismiss.

On April 16, 2007, Santana received his final revocation hearing. The court revoked his supervised release and imposed a new sentence of eight months' imprisonment and twenty-five months of supervised release.

---

[1]Under the Sixth Amendment, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

## I.

Santana's right to a prompt hearing on the petition for revocation of supervised release arises under the Due Process Clause of the Fifth Amendment, as applied to parole and probation revocation proceedings[2] in *Morrissey v. Brewer*, 408 U.S. 471, 485, 489 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973). *Morrissey* stated that a parolee was entitled to a preliminary hearing, which should be held "as promptly as convenient after arrest," 408 U.S. at 485, and to a final revocation proceeding to be held "within a reasonable time after the parolee is taken into custody," *id.* at 488.

**[1]** The requirements of *Morrissey* were formalized in Federal Rule of Criminal Procedure 32.1. *See* Fed. R. Crim. P. 32.1 advisory committee's notes (1979). Rule 32.1 prescribes three kinds of hearings: initial appearance, Rule 32.1(a); preliminary hearing, Rule 32.1(b)(1); and revocation hearing, Rule 32.1(b)(2). Each hearing has a timeliness requirement in the rule. *See* Fed. R. Crim. P. 32.1(b)(1)(A) (preliminary hearing "must [be] promptly conduct[ed]"), (b)(2) (final hearing to be held "within a reasonable time"). For the initial appearance, "A person held in custody for violating probation or supervised release must be taken without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 32.1(a)(1); *see also* 18 U.S.C. § 3606 ("[U]pon arrest, [a person alleged to have violated terms of supervised release] shall be taken without unnecessary delay before the court having jurisdiction over him.").

We review de novo the district court's ruling on whether Santana's due process rights as incorporated by Rule 32.1 have been violated. *See United States v. Havier*, 155 F.3d 1090, 1092 (9th Cir. 1998).

---

[2]We treat proceedings for revocation of probation, parole, and supervised release as equivalents for due process purposes, although these different procedures are governed by different statutes. *See United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005).

In his motion to dismiss, Santana relied on the delay of the initial appearance as the crucial event, and therefore we will consider the delay between the date he would have been released from state custody[3] (September 25, 2006) and the date of the initial appearance (January 23, 2007), a delay of 121 days, or about four months.

[2] Although Santana argues that no showing of prejudice is necessary in order to warrant dismissal, our cases considering due process claims for revocation proceedings have held that relief is not called for unless there was both unreasonable delay and prejudice. *E.g.*, *Benny v. United States Parole Comm'n*, 295 F.3d 977, 986 (9th Cir. 2002); *Camacho v. White*, 918 F.2d 74, 79 (9th Cir. 1990); *Vargas v. United States Parole Comm'n*, 865 F.2d 191, 194 (9th Cir. 1988); *Hopper v. United States Parole Comm'n*, 702 F.2d 842, 845 (9th Cir. 1983); *United States v. Wickham*, 618 F.2d 1307, 1311 (9th Cir. 1979). "Reasonableness" is itself a sort of balancing judgment in which the length of delay is considered in connection with the reasons for the delay. *E.g.*, *Camacho*, 918 F.2d at 79; *United States v. Berry*, 814 F.2d 1406, 1410 (9th Cir. 1987); *Wickham*, 618 F.2d at 1309-11.

[3] Santana cites a Speedy Trial Clause case, *United States v. Mendoza*, No. 06-50447, ___ F.3d ___, 2008 WL 1970339 (9th Cir. May 8, 2008), in which we recently held that no showing of actual prejudice was necessary to establish a violation of the defendant's rights by an eight-year delay between a defendant's indictment and arrest, during which the government failed to take steps to inform the defendant of his

---

[3]The government argues that Santana was not in federal custody until the federal warrant was executed on October 20, 2006, and that therefore we should not count the previous month as part of the relevant delay. It is undisputed that Santana was held in state custody from September 25 to October 20 because of the federal warrant; it is fairer to charge that time to the government's account than to Santana's. *See United States v. Wickham*, 618 F.2d 1307, 1309 (9th Cir. 1979) (looking to substance rather than form in deciding when clock starts running for prompt hearing).

indictment. In the context of revocation of supervised release, Speedy Trial Clause authority is applicable only by analogy, but in the past we have found that analogy helpful, though we have not probed how far the analogy goes. *See Camacho*, 918 F.2d at 79; *Wickham*, 618 F.2d at 1311. *But see United States v. Bischel*, 61 F.3d 1429, 1436 (9th Cir. 1995) (declining to apply Speedy Trial precedent in Fifth Amendment context).

**[4]** *Barker v. Wingo*, 407 U.S. 514, 530 (1972), held that analysis under the Speedy Trial clause requires balancing the factors of length of delay, reason for the delay, the defendant's timely protest of delay, and prejudice to the defendant. *See also United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003). *Barker* identified three types of actual prejudice: oppressive pre-trial incarceration, unnecessary anxiety of the accused, and impairment of the accused's ability to mount a defense. 407 U.S. at 532. The longer the delay, the less the showing of prejudice required, until an extremely lengthy delay attributable to government negligence creates a "strong presumption that [the defendant] suffered prejudice," which the government has the burden to rebut. *Mendoza*, 2008 WL 1970339, at *5.

**[5]** We hasten to say that a reasonable time for proceeding to a full-scale criminal trial is not the same as a reasonable time for revocation proceedings, and therefore Speedy Trial Clause authority should not be applied in revocation proceedings as if it were directly controlling. But even pursuing the Speedy Trial analogy, we must underline the huge disparity between the four-month delay in this case versus the eight-year delay that led to dismissal in *Mendoza*. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992), stated that the lower courts generally have agreed that post-accusation delay starts to become serious enough to trigger Speedy Trial analysis as it approaches one year. In *Gregory*, we observed that according to our cases, an eight-month delay is approximately the minimum delay that would make a *Barker* analysis necessary. 322 F.3d at 1162 n.3. By this measure, the four-month delay

in Santana's case would not even trigger ordinary Speedy Trial analysis, whereas Santana wants us to apply the no-prejudice analysis reserved for cases of extreme delay, which we conclude would be quite inappropriate.

**[6]** The *Mendoza* analysis being inappropriate, we apply our ordinary test in supervised release revocation cases and search for actual prejudice. *See* page 6009, *supra*. At oral argument, Santana's counsel admitted that he received full credit against his sentence for the time he spent in pre-revocation incarceration. Santana has not identified any other prejudice, aside from the anxiety of awaiting his revocation proceedings. In this case, even though the delay appears attributable to the government's neglect, in light of the lack of actual prejudice, we conclude that the four-month delay did not violate Santana's due process rights or his rights under Rule 32.1.

## II.

**[7]** Relying on *United States v. Hill*, 719 F.2d 1402, 1405 (9th Cir. 1983), Santana contends that the petition against him should have been dismissed because of the government's delay in executing the warrant. In *Hill*, we held that under 18 U.S.C. §§ 3651 and 3653 (repealed) (new provision at 18 U.S.C. § 3565(c)), jurisdiction to revoke probation expired five years after the beginning of the probation period; although issuance of a warrant could toll the period, *Hill* held that the tolling would not continue if the warrant was not served within a reasonable time. In that context, *Hill* stated that "a warrant for arrest based on a probation or parole violation should be executed within a reasonable time after issuance." *Id.* at 1405.

**[8]** The holding in *Hill* does not govern this case because the statute under which it was decided has been repealed and, even if it were still in effect, would not apply in a revocation of supervised release case. Moreover, in *Hill*, there was an

utterly unexcused two-and-a-half year delay between issuance of the warrant and execution, during which time the five-year statutory period for jurisdiction had expired. *Id.* at 1404. Hill was haled into revocation proceedings for a violation that had actually happened seven years earlier, when his entire term of probation was only three years. In contrast, in this case there was only a twenty-five day delay, and the warrant was executed within Santana's original term of supervised release. The delay in executing the warrant did not call for dismissal.

### III.

Finally, Santana contends that the procedures by which his supervised release was revoked are unconstitutional under the principle of *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)—that the Sixth Amendment requires any fact (other than the fact of a prior conviction) that increases the penalty for a crime above the statutory maximum to be found by a jury and proved beyond a reasonable doubt.

**[9]** This court rejected a constitutional challenge to the imposition and revocation of supervised release under 18 U.S.C. § 3583 in *United States v. Huerta-Pimental*, 445 F.3d 1220 (9th Cir.), *cert. denied*, 127 S. Ct. 545 (2006). *Huerta-Pimental* made two points:

(1)  Imposition of supervised release as part of the original sentence does not violate *Apprendi*. Imposing a term of supervised release is authorized as part of sentences by 18 U.S.C. § 3583(a), and therefore imposition of a term of supervised release does not exceed the statutory maximum, even if the statute of conviction itself does not mention supervised release. *Id.* at 1222-23.

(2)  Revocation of supervised release does not run afoul of *Apprendi* because revocation of supervised release is not governed by the Sixth Amendment. There is no Sixth Amendment right to jury trial for post-conviction determinations

such as the finding of whether a releasee violated the terms of his release. *Id.* at 1225.

Santana argues that the Supreme Court's decision in *Cunningham v. California*, 127 S. Ct. 856 (2007), calls into question the constitutionality of the revocation procedures because revocation depends on a judge's finding that the releasee has violated the terms of his release. 18 U.S.C. § 3583(e)(3). *Cunningham* concluded that the California determinate sentencing law set the maximum sentence at the middle of three ranges prescribed by the statute unless the judge found facts authorizing a sentence in the top range; since Cunningham had received a top-range sentence on account of judge-found facts, his sentencing violated the Sixth Amendment. 127 S. Ct. at 870-71.

**[10]** As *Huerta-Pimental* held, 445 F.3d at 1225, revocation of supervised release is not governed by the Sixth Amendment. *Cunningham* interprets the Sixth Amendment, and therefore it is not relevant to revocation proceedings. Nothing in *Cunningham* calls into question the continuing authority of *Huerta-Pimental*. *Cunningham* does not affect the validity of § 3583's procedure for revocation of supervised release.

The judgment of the district court is AFFIRMED.